NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                        :
UNITED STATES OF AMERICA,               :          Civil Action No.: 09-2269 (FLW)
                                        :
                    Plaintiff,          :
                                        :                     Opinion
          v.                            :
                                        :
JOHN S. FALCONE,                        :
                                        :
                    Defendant.          :
_____ :

<u>WOLFSON, United States District Judge</u>:

  Presently before the Court is Defendant John S. Falcone's Motion to Dismiss Plaintiff United States of America's ("the Government's") Complaint against him for the collection of taxes. Defendant's motion presents challenges based on the Government's alleged failure to: (a) properly assess the taxes due; and (b) bring the instant suit for collections within the applicable statute of limitations period.  For the following reasons, Defendant's motion is granted based upon the statute of limitations bar.

I.  BACKGROUND

  The federal tax code imposes liability on a "responsible person who willfully fails to collect, account for, or pay over employment or trust fund taxes" owed by a corporation.  <u>Garage v. United States</u>, 2005 WL 3610064, *3 (D.N.J. 2005).  On October 4, 1993, the IRS sent Falcone a letter

expressing its intention to assess a penalty against him as a responsible person of Falcone Construction Corporation ("Falcone Construction"). Bacon Decl., Exh. B ("1993 IRS Letter"). An attachment to that letter, Form 2751, specified the third and fourth quarters of 1992 as the taxable periods for which Falcone Construction failed to pay taxes. Id. Having received no payment, on March 7, 1994, the IRS imposed a responsible person penalty against Falcone. Bacon Decl., Exh. A at 1 ("Certificate of Assessment"). The total amount of the assessment was $682,601.13. Id. at 1.

Early the next year, on January 10, 1995, Mr. Falcone filed for Chapter 7 bankruptcy protection. Voluntary Petition, United States Bankruptcy Court, District of New Jersey, Def. Open. Br., Ex. F. By virtue of his bankruptcy petition, an automatic stay came into effect precluding the IRS from pursuing its collection efforts. See 26 U.S.C. § 6503(h); 11 U.S.C. § 362(a). On June 30, 1995, Falcone's bankruptcy was discharged by an order mailed from the clerk's office. Agostino Decl., Exh. G-H. This discharge terminated the automatic stay. See 11 U.S.C. § 362(c)(2)(C) ("the stay . . . continues until . . . the time a discharge is granted").

In January 1996, National Union, one of Falcone's creditors, moved to vacate the discharge order, arguing that Falcone "should not have received a discharge because of [National Union's] timely objection to discharge."[1] Application to Vacate Discharge, Bankr. Case No. 95-

---

[1]     Rule 4004(c)(1)(B) provides that "[i]n a chapter 7 case, on expiration of the time fixed for filing a complaint objection to discharge . . . , the court shall forthwith grant the discharge unless . . . a complaint objecting to the discharge has been filed . . . ."

In addition, the court may take judicial notice of Falcone's bankruptcy schedules, the record of proceedings in the bankruptcy case, and any adversary proceedings brought in relation to the

30202, Docket Entry 53 (January 18, 1996) ("Application to Vacate"), ¶ 6.  National Union's application asserted that the bankruptcy clerk erroneously entered the 1995 discharge without the explicit direction of the bankruptcy judge.  Id., ¶ 7.  Falcone agreed, and joined with that creditor in executing a Consent Order Vacating Discharge of Debtor.  See Consent Order Vacating Discharge of Debtor, Def. Open. Br., Ex. I ("Consent Order to Vacate").  Noting that Falcone and the trustee agreed to vacate the 1995 discharge "in view of the Objection to Discharge Filed by National Union ...," the order stated the 1995 discharge was "without any legal effect."  Id. at 1.  The Consent Order to Vacate did not address the automatic stay and whether it would be retroactively applied for the period of June 30, 1995 through January 19, 1996.

Once the discharge was vacated in January 1996, National Union and Falcone litigated the dischargeability of his debt to National Union.  National Union Fire Ins. Co. v. Falcone, Adversary Proc. # 95-3054, Blaskopf Decl., Exh. A.  Ultimately, the bankruptcy court concluded that Falcone's debt to National Union was not dischargeable.  Id.  A final discharge order was entered, concerning Falcone's other debts, on August 9, 1999.  See Def. Open . Br., Ex. J.

About a year following the final discharge, Falcone submitted an Offer in Compromise with the IRS, which Offer was acknowledged by the IRS on November 9, 2000.  See Offer in Compromise, Form 656, Def. Open. Br., Exh. M ("Offer in Compromise"); Letter from John

---

bankruptcy case.  See Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 n. 3 (3d Cir. 1988) ("the district court was entitled to take judicial notice of [such] matters in rendering its decision ...."). Also see the discussion regarding judicial notice in Part II - Standard of Review, infra.

Falcone, Blaskopf Decl., Exh. B ("Offer in Compromise Letter").[2]  In connection with his Offer, Falcone recognized that "a great deal of money, 1.5 million, is owed to the IRS as a result of a business failure for which I was found to be the responsible person."  Offer in Compromise at 5. In addition, the Offer in Compromise form included an agreement regarding suspension of the statute of limitations period:  "I/we understand that the statute of limitations for collection will be suspended during the period an offer is considered pending by the IRS ...."  Offer in Compromise at 3.  The IRS rejected the Offer on July 19, 2001.  See  Certificate of Assessment at 2.  Still not having received full payment, the IRS instituted this action on May 13, 2009.

II.     STANDARD OF REVIEW

On a motion to dismiss, courts must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff," Buck v. Hampton Tp. School Dist., 452 F.3d 256, 258 n.3 (3d Cir. 2006), although it "need not credit conclusory allegations or legal conclusions."  See Gen. Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 333 (3d Cir. 2001).  A complaint may not be dismissed under Rule 12(b)(6), "unless [the court] find[s] that the plaintiff can prove no set of facts that would entitle her to relief.  Id. (citing Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 559 (3d Cir. 2002)).

_____

[2]     There are two documents that the parties cite as Falcone's Offer in Compromise.  The first document is an Offer in Compromise form completed by Falcone, and attached as an exhibit to Falcone's moving papers.  I refer to this document as the Offer in Compromise.  The second document is a typewritten letter from Falcone, attached to the Government's papers, which I refer to as the Offer in Compromise Letter.  There is no date on this letter, but it appears to have been submitted after the Offer in Compromise.  It purports to provide the IRS with "all requested information" and states "I believe the original offer I made should be accepted ...."

4

In connection with evaluating a motion to dismiss, courts may consider documents submitted with the complaint. Id. at 560. Courts may also consider any "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." Id. (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

In Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410 (3d Cir. 1999), the Third Circuit clarified the manner in which courts may take judicial notice of records from another proceeding:

> [O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.

Id. at 426-27 (collecting cases). When, by contrast, a "court . . . examines a transcript of a prior proceeding to find facts," the court "converts a motion to dismiss into a motion for summary judgment." Id. at 427 n.7 (citing Kauffman v. Moss, 420 F.2d 1270, 1274-75 (3d Cir. 1970)). The distinction is "between judicially noticing the existence of prior proceedings and judicially noticing the truth of facts averred in those proceedings." Id. (citing 21 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure: Evidence § 5106, at 247 (1999 Supp.)). "It has been suggested that the appropriate analogy is the hearsay rule, which allows an out-of-court statement to be admitted into evidence for purposes other than establishing the truth of the statement." Id. (citation omitted).

Moreover, even if a complaint does not explicitly refer to or cite a document, that document may nonetheless be relied upon by the court in ruling on the motion to dismiss. "[T]he critical [issue] is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original) (citations omitted). This is so whether the extrinsic document is attached to defendant's or the plaintiff's moving papers. See Pension Ben. Guar. Corp. v. White Consol. Industr., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). As long as the document is authenticated, the court need not convert the motion into one for summary judgment in order to consider the document. See id.; In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426.[3]

Here, both parties attached authenticated documents to their motion papers. These documents include Defendant's Offer in Compromise and the IRS' Certificate of Assessment, which certificate serves as proof of the validity of the IRS' assessment. Both of these documents form the basis for portions of the IRS' complaint. Accordingly, they may properly be considered in ruling on the motion to dismiss. Cf. U.S. Land Res. LP v. JDI Realty, LLC, 2009 WL 2488316

---

[3]    If the court were to convert this motion into one for summary judgment, it would have to provide the parties with advance notice. See In re Rockefeller Ctr. Prop., Inc. Sec. Litig., 184 F.3d 280, 287-88 (3d Cir. 1999). Such notice affords the parties "reasonable opportunity to present all material relevant to a summary judgment motion." Id. (internal quotations marks and citations omitted). See also Latham v. U.S., 306 Fed.Appx. 716, 717-18 (3d Cir. 2009) ("Rule 56(c) requires that the parties have at least ten days' notice before the court may consider the motion for summary judgment, and the opportunity to submit pleadings, depositions, answers to interrogatories, admissions on file, and affidavits.").

(D.N.J. 2009) (holding that certificates of good standing relating to plaintiff's claim and attached to the parties' papers could be considered by court on motion to dismiss).  As for the records of Falcone's bankruptcy proceeding, they may be properly considered for the purposes of recognizing what occurred in the bankruptcy, though not for the truth of the matters therein.  See Southern Cross Overseas Agencies, Inc. , supra at 426.  The bankruptcy court records may also be used to "impeach" any factual assertions found within the complaint.  See id. at 427 n.7.

III.    DISCUSSION

    A.    Assessment Challenges

    Falcone first challenges the IRS' "lump sum" assessment practice, i.e., the IRS' decision not to list each quarter from which a portion of the responsible person assessment derived.  Falcone points, specifically, to the IRS' failure to reference the third quarter of 1992 in recording its assessment.  The IRS Notice of Levy, for example, reads, in pertinent part:

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment |
|---|---|---|
| CIV PEN | 12/31/1992 | $682, 105.13 |

Notice of Levy dated Jan. 19, 2009, Def. Open. Br., Exh. C.[4]  In Falcone's view, the IRS should have also explicitly referenced the third quarter of 1992 because responsible person assessments are based on trust fund penalties related to the corporation's failure to pay quarterly employment taxes.

---

    [4]    Likewise, the IRS' Certificate of Assessment references only the tax period of "Dec 1992."  Certificate of Assessment at 1.

The key case cited by Falcone, <u>Laukner v. United States</u>, 68 F.3d 69 (3d Cir. 1995), is unhelpful to him.  In <u>Laukner</u>, the IRS argued that no statute of limitations period applied to responsible person assessments despite the plain language of 26 U.S.C. § 6501, which states that "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed."  68 F.3d at 70.  The Third Circuit affirmed the district court's rejection of the IRS' argument for the reasons stated by the district court.  <u>Id.</u>  Neither the district nor the circuit court ruled on whether a lump sum assessment was permitted under the responsible person statute, or whether a record of assessment must reference each underlying quarterly tax period from which the responsible person assessment derived.[5]  <u>See</u> <u>Lauckner v. United States</u>, 1994 WL 837464 (D.N.J. 1994).

Moreover, Falcone's argument is rooted in a misunderstanding of the nature of responsible person assessments.  "[A] responsible party assessment is not a tax liability imposed for a particular quarterly tax period.  Rather, it is an aggregate sum penalty equal to the total amount of unpaid withholding taxes during any tax period in which an individual is a responsible party."  <u>United States v. Rabinovici</u>, 2007 WL 923089, *6  (E.D.N.Y. 2007) (citations omitted).  Thus, in

---

[5]     For this reason, Falcone's citation to <u>Jones v. U.S.</u>, 60 F.3d 584, 589-90 (9th Cir. 1995) is also unavailing.  That case denied summary judgment in favor of the IRS where the IRS' summary record of assessment "did not identify any party as having been assessed, and where none of the amounts claimed against the plaintiff matched the amounts for taxes or penalties on the summary record of assessment."  <u>Intersport Fashions West, Inc. v. U.S.</u>, 84 Fed.Cl. 454, 459 (Fed.Cl. 2008) (explaining <u>Jones</u>).  There was also an issue of fact as to the date the assessments were prepared because the records of assessment contained no dates.  <u>Jones</u>, 60 F.3d at 590.  None of these facts adhere in the case before this court.

Rabinovici, the Eastern District of New York held that a Notice of Levy need not specify the underlying quarters from which the responsible person assessment originated. Id. at *6-7. There are numerous cases, within and outside this circuit, reaching the same conclusion, although the Third Circuit has yet to rule on this question. See e.g., United States v. White, 466 F.3d 1241, 1249 (11th Cir. 2006) ("[A] Form for the most recent quarter with a total for the delinquencies of the past quarters is sufficient for the Government to meet its burden of proving the validity of its assessment."); Garage v. United States, 2005 WL 3610064 at *3.

Relatedly, Falcone argues that he did not receive fair notice of the quarterly periods for which the trust fund penalty was imposed against him as a responsible person. See Def. Open. Br. at 29. This is factually incorrect. Attached to the IRS' 1993 letter notifying Falcone that it intended to assess him as a responsible person, is Form 2751, which form designates the quarterly periods for which the IRS sought to hold him accountable. The form states, in pertinent part:

| Tax Return Form No. | Tax Period Ended | Date Tax Assessed | Penalty |
|---|---|---|---|
| 941 | 09/30/92 | 04/05/93 | $552,219.71 |
| 941 | 12/31/92 | 05/17/93 | $130,381.42 |

1993 IRS Letter. Falcone has not challenged the validity of this letter. Based on the clear demarcation of the two 1992 quarterly periods, I find Falcone's contention without basis in the record.

In addition, while Falcone cites my opinion in United States v. Wall, 2007 WL 2916480 (D.N.J. 2007), for the proposition that "[a] tax liability assessed under [the responsible person statute] requires a taxable period," Def. Open. Br. at 29, there is nothing in the Wall opinion to support such a proposition. Rather, "the only disputed issue before the [Wall] Court [wa]s whether

the summary record of assessment . . . was signed by a properly authorized IRS official."  2007 WL 2916480 at *2.

Further, as I noted in the <u>Wall</u> opinion, the Third Circuit has held that certificates of assessment provided by the IRS are presumptively valid and establish a prima facie liability case against the taxpayer.  <u>Id.</u> (quoting <u>Freck v. Internal Rev. Svc.</u>, 37 F.3d 986, 991 n.8 (3d Cir. 1994), inter alia).  Once a valid certificate is presented, the defendant taxpayer bears both the burden of production and persuasion.  <u>Id.</u> (citing <u>Psaty v. U.S.</u>, 442 F.2d 1154, 1159-60 (3d Cir. 1995)).  In light of the presumption of correctness afforded certificates of assessment, and Defendant's failure to point to any legal or factual infirmity in the certificate provided here, his challenges to the assessment are rejected.

B.     Collection Challenges - Statute of Limitations

Falcone asserts two challenges to the tolling of the applicable limitations period, 26 U.S.C. § 6502, which grants the IRS ten years from the date of assessment to collect a trust fund penalty from a responsible person.  26 U.S.C. § 6502(a)(1) ("Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court . . . within 10 years after the assessment of the tax ....").  Both parties agree, that without the benefit of any tolling, the limitations period would have expired on March 7, 2004.  However, the parties further agree that there are two potentially applicable tolling periods.   One is triggered by Falcone's Offer in Compromise and the other by his bankruptcy petition.  I address each in turn.

1.     Offer in Compromise

Generally, the submission of an Offer in Compromise tolls the statute of limitations in a collection action.  See 26 U.S.C. § 6331(k)(1).  The submission tolls the limitations period until it is "terminated, withdrawn, or formally rejected."  Offer in Compromise at 4, ¶ (m) (setting forth taxpayer-offeror's understanding with respect to tolling of statute of limitations).  Here, the language in the Offer in Compromise provided for "suspension of any statutory periods of limitation . . . for the assessment of the tax liability for the tax periods identified in Item 5."  Id. at 3, ¶ (e).  Item 5 directs the taxpayer to "mark an 'X' in the box for the correct description and fill-in the correct tax period(s) ...."  Id. at 1.  Falcone checked the box for the Trust Fund Recovery Penalty related to "Falcone Const."  Id.  Noticeably, Falcone did not check off the line for "Employer's Quarterly Federal Tax Return ─ Quarterly period(s)."  Id.  There is a blank line on the Offer, next to this box, allowing space for a taxpayer-offeror to denote the applicable quarterly tax period.

Against this factual backdrop, Falcone argues that his filing of the Offer in Compromise cannot serve to suspend the statutory collection period because "the submission did not specify which Trust Fund Recovery time periods were to be compromised."  Def. Open. Br. at 16. Without specifying the time period, Falcone continues, "there is no presumption that the Offer in Compromise relates to the third or fourth quarter of 1992."  Id.  Just as with his challenges to the assessment, Falcone fails to appreciate here that the responsible person assessment is a lump sum assessment.  Thus, the Offer in Compromise need not specify which taxable quarters comprised the underlying corporate tax liability.  Cf. Dallin ex rel. Estate of Young v. U.S., 62 Fed.Cl. 589, 604-05 (Fed.Cl. 2004) (upholding responsible person assessment where IRS referenced first rather than last quarter from which assessment derived).

<u>U.S. v. Grabscheid</u>, 1982 WL 1624 (N.D.Ill. 1982), cited by Falcone, does not compel a contrary result.  In <u>Grabscheid</u>, the defendant taxpayer was assessed as a responsible person for the underlying corporate tax liability for the period June 1, 1973 through March 31, 1974.  <u>Id.</u> at *1. The IRS filled out an Offer in Compromise form on behalf of the taxpayer,  erroneously denoting April 30, 1973 as the date of the responsible person assessment.  Upon later review, the IRS realized that the assessment date should have been March 31, 1974.  It argued to the district court that the parties' true agreement was to fix the March 31, 1974 date and that the offer should be amended to reflect the parties' understanding.  Agreeing with the taxpayer, the district court would not permit the IRS to correct the erroneous date.  Applying the parol evidence rule, the court concluded it was could not rewrite the offer.  <u>Id.</u> at *2.

Falcone seizes on language in the opinion stating that "none of the taxable periods forming the basis of the complaint of the United States against the taxpayer are listed in the waiver."  <u>Id.</u>  At first blush, this statement supports Falcone's position.  But the facts of <u>Grabscheid</u> were that the date listed on the waiver (April 30, 1973) was before the quarterly tax periods from which the responsible person assessment derived (June 1, 1973 through March 31, 1974).  Hence, the court made the aforesaid statement in the following context:  "None of the taxable periods forming the basis of the complaint of the United States against the taxpayer are listed in the waiver.  Rather, the April 30, 1973 date is irrelevant to the claim by the United States."  <u>Id.</u> (emphasis added).

In addition, the parties in <u>Grabscheid</u> "agree[d] that the correct date which would have reflected the end of the assessment period is March 31, 1974."  They, further, agreed that if the March 31, 1974 date had been noted, the offer would have covered the period between June 1,

12

1973 and March 31, 1974.  See id.  Because March 31, 1974 was the final quarter for which the

responsible person assessment was imposed, Grabscheid actually supports the Government's lump

sum assessment practice here.

Perhaps more importantly, and unlike the facts of Grabscheid, Falcone (as opposed to the

IRS) filled out the Offer in Compromise and chose not to list each quarterly period at his own

option.  If he wanted to indicate that he intended to compromise only that portion of the

assessment relating back to particular taxable quarters, e.g., only the third quarter of 1992, he could

have so indicated.  And, as the Government correctly points out, he notes in the Offer that his

assessment amounts to $1.5 million.  Only by including both the third and fourth quarters of 1992

does his estimate make sense.[6]  Further, in his Offer in Compromise Letter, Falcone states that "the

outstanding moneys due the IRS comes from unpaid 941 taxes, at a time when I was working for

my father."  Nowhere in the letter does he suggest that he is limiting his Offer to specific quarterly

tax periods, nor does he indicate in his papers that he did not work for his father during the third

quarter of 1992.  This argument is, accordingly, rejected by this court.

---

[6]      The 1994 assessment against Falcone was for $682,105.13.  By January 16, 2009, he had accrued another $1,367,238.40 in statutory interest and penalties, bringing the total to approximately $2 million.  See Notice of Levy dated January 16, 2009, Def. Open. Br., Exh. C. When he submitted the Offer of Compromise in the fall of 2000, the statutory interest and penalties must have been less than $2 million.  By inference, it would appear that the amount was closer to the $1.5 million noted in Falcone's Offer.  In addition, Form 2751 indicates that the penalty relating solely to the fourth quarter of 1992 was only $130,381.42.  This amount alone could not have increased to $1.5 million by the fall of 2000 when the Offer was submitted.  So, Falcone's contention that his $1.5 million estimate did not refer to the third and fourth quarters of 1992 together is inconsistent with the text of the Offer.

Falcone also argues in his opening brief that the tolling period must be limited to 42 days, by operation of the Community Renewal Tax Relief Act of 2000. See Def. Open. Br. at 14. The Government concedes this point in its opposition brief. See Pl. Opp. Br. at 5 (citing United States v. Ryals, 480 F.3d 1101, 1106-07 (11th Cir. 2007). Thus, the Government is entitled to a 42 day suspension of the limitations period on account of the Offer in Compromise.

2.    Bankruptcy Discharge

Falcone's challenge to the calculation of the tolling period tied to his discharge from bankruptcy presents nuanced legal questions. Pursuant to the IRS Code,

> [t]he running of the period of limitations . . . on the making of . . . collection shall, in a case under [the Bankruptcy Code], be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and . . . [for an additional] 6 months thereafter.

26 U.S.C. § 6503(h). The bankruptcy automatic stay provision operates to preclude IRS collection efforts against an individual during the pendency of a bankruptcy proceeding. See 11 U.S.C. § 362(a). The stay ceases to exist upon discharge of the bankruptcy. See 11 U.S.C. § 362(c)(2)(C); U.S. v. White, 466 F.3d at 1244.

Falcone does not dispute whether it was appropriate for the bankruptcy court to vacate the 1995 discharge. Indeed, he could not, because he consented to the order vacating it in January of 1996. He argues only that the 1996 order vacating the discharge should not be interpreted to apply retroactively to support continuous application of the automatic stay throughout the bankruptcy proceeding until the 1999 final discharge.

In Falcone's view, the automatic stay ceased on June 30, 1995, the date of the initial discharge. At that point, the additional six month period provided for by 26 U.S.C. § 6503(h) began to run and concluded on December 30, 1995.[7] The automatic stay did not begin again until the January 1996 vacation of that discharge, he contends. Taking into account that the automatic stay was not in effect while the 1995 discharge remained unchallenged, he continues, the limitations period expired, before the Government instituted this suit. That the Consent Order to Vacate should not be applied retroactively, Falcone argues, is supported by the principle that legally erroneous orders are not void as a matter of law.

The Government, in contrast, argues that the 1996 Consent Order to Vacate rendered the 1995 discharge void ab initio such that, for tolling purposes, the automatic stay provisions of the bankruptcy code remained continuously in effect from the filing of the bankruptcy petition until the final discharge in 1999. Under the Government's theory, the limitations period would have been tolled a total of 1856 days, and the complaint timely brought. The Government disputes Falcone's reliance on the 1995 discharge order because the language of the Consent Order to Vacate declared that erroneously entered order "without any legal effect" such that the discharge is "therefore, void." Pl. Opp. Br. at 6. Hence, the Government concludes that the Consent Order to Vacate must be interpreted to retroactively impose the automatic stay.

---

[7] Falcone argues in his opening brief against the application of the distinct tolling provision in § 6503(b). Because the Government does not oppose this argument in its opposition, the court does not consider § 6503(b) here.

A recent Supreme Court decision affirmed, however, that legally erroneous orders are not void.  That decision, United State Aid Funds, Inc. v. Espinosa, ---- S.Ct. ----, 2010 WL 1027825 (2010), involved a creditor's late challenge to an erroneously granted confirmation of plan and subsequent discharge in a Chapter 13 proceeding.  Id. at *4.  In that case, the bankruptcy court failed to make a determination of undue hardship before confirming the discharge of student loan interest under the plan, as was clearly required by the applicable bankruptcy laws.  Id. at *5.  A student loan creditor, aggrieved by the plan, failed to object to the plan before the bankruptcy court, or to appeal the confirmation and/or subsequent discharge, until four years after the plan was confirmed.  Id. at *4.

The creditor's challenge proceeded under Federal Rule of Civil Procedure 60(b)(4), which permits a party to challenge a final judgment as void, i.e., "a legal nullity."  Id. at *6.  Noting that "[a] judgment is not void . . . simply because it is or may have been erroneous," the Supreme Court pointed out that only those judgments premised on a jurisdictional error or a violation of due process fall within Rule 60(b)(4)'s ambit.  Id.  The Court went on to hold in favor of the debtor, reasoning that the creditor should have challenged the bankruptcy court's legal error before that court or on appeal.  Id. at *8.

While Espinosa supports Falcone's argument that erroneously entered orders are not legal nullities, that decision is limited to Rule 60(b)(4), and here, the Consent Order to Vacate did not appear to invoke that provision.  Actually, the Order did not specify under what authority the 1995

discharge was vacated,[8] and there is more than one legal theory under which the Consent Order to Vacate could have been entered.  See generally In re Singleton, 358 B.R. 253, 259 (D.S.C. 2006) ("Bankruptcy courts are authorized to set aside a final judgment or order . . . under Fed. R. Bankr. P. 9024, which incorporates Fed.R.Civ.P. 60(b) into practice under the Bankruptcy Code."); In re Pilar Cordova Antuna, 45 B.R. 271, 274-75 (Bankr.W.D. Mo. 1985) (collecting authorities relating to bankruptcy court's authority to vacate its own orders via Rule 60(b) or via inherent authority). Rule 60(b), for example, allows bankruptcy courts to vacate orders entered as a result of "mistake, inadvertence, . . . or for any other reason justifying relief from the operation of the judgment." Disch v. Rasmussen, 417 F.3d 769, 778 (7th Cir. 2005) (citing Rule 60(b)).[9]

In Disch, the Seventh Circuit affirmed a bankruptcy court's vacation of a discharge under Rule 60(b) where the court clerk issued the discharge "automatic[ally]" despite there being a pending objection to discharge.  Id. at 775.  The bankruptcy court later vacated the clerk-issued discharge upon a finding that the debtor failed to meet statutory conditions under another provision

---

[8]     The Consent Order to Vacate merely cites Local Bankruptcy Rule 3(k) which, in 1996, provided for consent orders in lieu of motion:

> Requests to the Court for an order on which all parties who are entitled to notice have affixed their written consent may be presented by application without motion or hearing.  The application shall explain the grounds for entry of the order.

L. Bankr. R. 3(k)(1)(1995).

[9]     As noted, Bankruptcy Rule 9024 makes Rule 60 applicable to bankruptcy orders.  See Disch, 417 F.3d at 778.  See also Bankr. Rule 5010, Adv. Comm. Notes ("Under Rule 9024, clerical errors in judgments, orders, or other parts of the record or errors therein caused by oversight or omission may be corrected.").

of the bankruptcy code.  Id.  That court, further, noted that it would have never issued the order had it known that the debtor was not legally entitled to the discharge.  Id. at 779.  In fact, the court was not aware that the discharge had been automatically granted by the court clerk.  Id.  Upholding the bankruptcy court's ruling, the Seventh Circuit held that "the initial grant of a discharge for [the debtor] was the sort of 'mistake or 'inadvertence' that the court was empowered to reach under Bankruptcy Rule 9024 ...."  Id.

In addition, under Rule 60(a), courts may vacate or amend orders containing clerical errors. Fed. R. Civ. P. 60(a)("Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party ....").  Some courts have applied this subsection to vacate prematurely entered discharge orders.  See e.g., In re Peterson, 12 B.R. 961, 963 (D. Colo. 1981); In re Kelly, 392 B.R. 750, 757 (W.D. Wisc. 2007) (holding that where "the parties knew . . . that an error had crept into the judgment or other judicial record," Rule 60(a) may apply) (quoting Lowe v. McGraw-Hill Cos., 361 F.3d 335, 341 (7th Cir. 2004)).  Other cases, however, suggest that Rule 60(a) is not directed at that sort of mistake.  Disch, 417 F.3d at 779.  These latter cases reason that Rule 60(a) "allows a court to correct records to show what was done, rather than change them to reflect what should have been done."  In re Kelly, 392 B.R. at 757 (quoting Blue Cross & Blue Shield Ass'n v. Amer. Exp. Co., 467 F.3d 634, 637 (7th Cir. 2006)).

Under these precedents, it appears that the Consent Order to Vacate could have been entered under either Rule 60(b), for mistake, or 60(a), as a clerical error.  National Union's Application to Vacate states that the 1995 discharge was entered by the court clerk without explicit

18

direction from the bankruptcy judge.  National Union alerted the judge to the erroneously entered discharge approximately six months after the discharge was entered, in December 1995, and filed its formal application to vacate the order shortly thereafter.  Application to Vacate, ¶ 7.  The Consent Order to Vacate states that Falcone consented, "in view of the Objection to Discharge Filed by National Union ...."  Consent Order to Vacate at 1.  As these circumstances are similar those under the aforesaid cases, it would appear that the bankruptcy court could have entered the Consent Order to Vacate under the authority of either subsection of Rule 60.[10]

That said, I need not decide under which subsection the bankruptcy court proceeded because the key question is, whether pursuant to Rule 60(b) or 60(a), a vacated discharge retroactively imposes the automatic stay.  If the stay was retroactively imposed, any collection action by the IRS would have been barred during the time between the 1995 discharge and the 1996 Consent Order to Vacate, thereby extending suspension of the limitations period.  But, if the stay was not retroactively imposed, the IRS would not have been barred during that time frame and the statute of limitations should not be tolled.

Falcone cites the body of law, beginning with the Eleventh Circuit's decision in In re Lashley, 825 F.2d 362, 364 (11th Cir. 1987), denying retroactive effect to orders vacating erroneously entered dismissals of Chapter 13 bankruptcy proceedings.  These cases reason that the bankruptcy code's automatic stay statute, 11 U.S.C. § 362, prohibits the granting of retroactive

---

[10]     Interestingly, the Third Circuit has even suggested that clerical mistakes may be redressed under Rule 60(b) as opposed to Rule 60(a).  See In re Fesq, 153 F.3d 113, 117 n.6 (3d Cir. 1998) (discussing the use of Rule 60(b) to revoke Chapter 13 confirmation orders).

imposition of the stay.  They note that, while the statute provides for retroactively granting relief from a stay by "annulling" it, see 11 U.S.C. § 362(d), there is no provision under the statute for retroactively imposing a stay.  See e.g., In re Gargani, 398 B.R. 839, 840 (Bkrtcy.W.D.Pa. 2009). Hence, these courts hold, "when a [Chapter 13] case is dismissed, the stay is terminated, and if the case is reinstated, the stay is not retroactively reimposed . . ., and actions taken by creditors during such a dismissal are and remain valid."   In re Webb Mtn, LLC, 414 B.R. 308, 340 (Bkrtcy.E.D.Tenn. 2009) (quoting Moore v. Branch Banking & Trust, 2006 WL 4468609, at *8 (Bankr.D.Md. 2006)) (emphasis added).[11]   This same analysis has been applied to Chapter 11 dismissals.  See e.g., In re Club Candlewood Associates, L.P., 106 B.R. 758, 758 (N.D. Ga. 1989); In re Royal Gate Associates, Ltd., 81 B.R. 165, 168 (Bkrtcy.M.D.Ga. 1988) (same).[12]

---

[11]      It is not argued that the exception for due process violations discussed in these cases is applicable here.  See In re Webb Mtn, LLC, 414 B.R. 308 (Bkrtcy.E.D.Tenn. 2009) for a discussion of a this exception.  Id. at 340 ("Several courts have concluded that reinstatement of a dismissed bankruptcy case does not affect the validity of a creditor's actions taken during the period the case was dismissed, unless there was a violation of due process rights.").

[12]      There is one case in this district in which a court retroactively imposed a stay.  In In re Ganim, 2007 WL 880598 (Bankr.D.N.J. 2007), the bankruptcy court retroactively imposed the stay after vacating its prior Stay Relief Order.  Unlike a bankruptcy court retroactively imposing a stay after vacating a discharge or dismissal, however, the In re Ganim decision is best understood as modifying the original Stay Relief Order for cause, as is expressly permitted by the automatic stay statute.  See 11 U.S.C. § 362(d)(granting bankruptcy courts authority to "terminate, modify, or annul" the automatic stay provision for cause).  Thus, its analysis is not helpful here.

      In addition, the bankruptcy court in In re Pilar Cordova Antuna, supra, concluded that it could enter a discharge nunc pro tunc when it had failed to previously enter it as a result of oversight or clerical omission.  But it made no mention of the effect of its retroactive application on the automatic stay and is, likewise, not helpful here.

I find the decision in In re Hill particularly instructive.  305 B.R. 100 (Bankr.M.D.Fla. 2003).  In that case, the bankruptcy court entered a dismissal order, on May 14, 2002, because the debtor was more than 30 days delinquent to the Chapter 13 Trustee.  Id. at 111.  Per 11 U.S.C. § 362(c)(2), the automatic stay was terminated upon dismissal.  Shortly thereafter, on May 24, 2002, the debtor filed a motion to vacate the dismissal order because she had paid the past due monies to the trustee.  Before she was heard on her motion, however, her home was sold at a sheriff's sale on July 9, 2002.  Then, on July 18, 2002, the Court granted her motion and vacated the dismissal order.  Id.  The mortgage company who sold the home subsequently petitioned the court for clarification as to whether the July 18th order retroactively imposed the stay and, consequently, voided the sheriff's sale.  Id. at 103.  After conducting a thorough review of the case law, the court determined that "the strong weight of authority concludes that the dismissal of a case terminates the automatic stay, and the court is without authority to impose the stay retroactively."  Id. at 107.  The court, accordingly, refused to invalidate the sale.

The In re Hill decision, further, summarizes the reasoning underlying non-retroactive imposition of the automatic stay.  In addition to there being no language in § 362 to support retroactive imposition, In re Hill noted the following rationale:

> retroactive reinstatement of the "automatic stay" is squarely at odds with . . . and Congress' intent that the parties be returned to the status quo ante.  By "undoing" the return to the status quo ante through the retroactive application of the stay, the bankruptcy court engaged in a kind of judicial time travel that cannot be reconciled with the law. This was not a simple matter of a nunc pro tunc order accomplishing that which should have been done previously. Rather, the [vacatur] order . . . divested otherwise vested rights from parties previously

> properly restored to the status quo ante pursuant to subsection
> 362(c)(2).

Id. at 105 (quoting Nicholson v. Nagel (In re Nagel), 245 B.R. 657, 662 (D.Ariz.1999) (emphasis added).

While I find In re Hill's analysis persuasive, I need not decide whether the bankruptcy judge here had the authority to retroactively impose the stay because, even assuming he did, there is no indication that he actually imposed the stay retroactively. The Consent Order to Vacate clearly invalidated the 1995 dismissal, but made no mention of the automatic stay provision. This is not surprising, given that the Consent Order to Vacate resulted from National Union's application seeking to confirm the viability of its pending objection to the discharge. Both Falcone and the trustee consented to National Union's request on this basis. There was no question before the court as to the status of the automatic stay from June 1995 through the date of the Consent Order to Vacate.

The Government seizes upon the "without any legal effect" language in the Consent Order to Vacate, arguing that it provides a sufficient basis to impute a retroactive application of the stay. But that language must be read in connection with the genesis of the order. Given that the order was entered in response to National Union's application, the "without any legal effect" language clearly communicates only that the 1995 discharge order was no longer valid. Simply put, the court made no finding regarding retroactive imposition of the automatic stay in connection with the Consent Order to Vacate.

Nor does my review of the bankruptcy court proceeding in toto reveal that the question of retroactivity was ever presented to the bankruptcy court.  I have not found, and the Government has not pointed to, any argument or application raising this issue there.  Without more, this court cannot assume that the judge intended the Consent Order to Vacate to trigger retroactive imposition of the automatic stay.

Moreover, I find it unlikely that the bankruptcy court would have ruled on the retroactivity question without a factual context within which to make his decision.  The In re Hill court, and others that have addressed retroactive imposition of the stay, were faced with applications by either the debtor or creditor seeking clarification as to the effect of the vacatur order on the automatic stay.  See In re Hill, supra at 103; see also e.g., In re Gargani, 398 B.R. at 840; In re Singleton, 358 B.R. at 256.  Those factual contexts served to crystallize the legal issue before the courts.[13]

Courts will not "giv[e] to statutes a retrospective operation, whereby rights previously vested are injuriously affected, unless compelled to do so by language so clear and positive as to leave no room to doubt that such was the intention of the legislature."  Landgraf v. United States, 511 U.S. 244, 271 (1994) (quoting Chew Heong v. United States, 112 U.S. 536, 559 (1884)) (emphasis added).  This quote encapsulates the presumption against the retroactive application of statutes.

---

[13]      As expressed by the Ninth Circuit Bankruptcy Appellate Panel in In re Aheong, 276 B.R. 233, 243 n.10 (9th Cir. BAP 2002), "[vacating] an order dismissing a bankruptcy case would have potentially enormous, highly disruptive, and unintended consequences," including whether the automatic stay must be retroactively imposed.  Hence, the panel "prefer[red] not to answer any of these difficult questions until we must."  Id.  Likewise, I see no basis for concluding that the bankruptcy judge in Falcone's proceeding would have ventured off into this "highly disruptive" area without a request by a party requiring such an expedition.

See id.  While not presented with the interpretation of a statute here, the same principle applies to interpreting the Consent Order to Vacate.  Determining that the Consent Order to Vacate retroactively imposed the stay could affect the previously-vested rights of all the creditors in, and other parties related to, Falcone's bankruptcy.  I will not open that juridical "can of worms" since there is no clear indication that the Consent Order to Vacate was drafted with that intention in mind.

Lastly, the Government argues that it is entitled to deferential application of the limitation period statutes here.  Even so, that "[s]tatutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government," Badaracco v. C.I.R., 464 U.S. 386, 391-92 (1984) (quoting E.I. Dupont de Nemours & Co. v. Davis, 264 U.S. 456, 462, 44 S.Ct. 364, 366, 68 L.Ed. 788 (1924), does not compel a contrary result in this case.  Because there is no indication that the bankruptcy court retroactively imposed the automatic stay, there is no basis for this court to interpret § 6503(h) in the IRS' favor.  Section 6503(h) clearly states that the limitations period is "suspended for the period during which the Secretary is prohibited by reason of such case from . . . collecting ...."  Considering the records of the bankruptcy proceedings, the IRS has not sufficiently alleged that it was prohibited from collecting against Falcone from June 30, 1995 through January 19, 1996.  Subtracting this time frame from the limitations period calculation, the IRS' complaint is out of time.

I do not find this result harsh as it was well within the IRS' power to seek clarification, before the bankruptcy court, of any automatic stay implications of the Consent Order to Vacate. The IRS, instead, either ignored the issue, or chose to presume the legal effect of the Consent

Order to Vacate and then rely upon its presumption in waiting until after the limitations period, minus the disputed time frame, to bring this collection action. It must now bear the consequences of that decision.

IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is hereby GRANTED.


Dated: March 30, 2010                                   /s/ Freda L. Wolfson
                                                        Freda L. Wolfson, U.S.D.J.